### FIRST NATIONAL BANK OF ALEX, OKLA., v. GODWIN.

No. 24784.    April 2, 1935.

Rehearing Denied July 9, 1935.

Barefoot & Carmichael, for plaintiff in error.

Bond, Hatcher & Bond, for defendant in error.

PER CURIAM. This is an action on appeal from the district court of Grady county, Okla. The action was brought by the First National Bank of Alex, Okla., against C. Godwin on a promissory note, originally in the sum of $800, bearing date of October 28, 1931, and due May 1, 1932. Judgment was in favor of the defendant below, from which judgment plaintiff below has appealed to this court.

The facts show that about April 15, 1930, the defendant, C. Godwin, signed a note with J. E. Cruse in favor of the plaintiff bank for $1,000. This money was used by J. E. Cruse to pay off certain indebtedness owed by him. On or about January 16, 1931, the bank renewed the note signed by Cruse and Godwin, both Cruse and Godwin signing the renewal note. Cruse, on or about the 2nd day of June, 1931, was adjudged a bankrupt on a voluntary petition. Certain dividends were received by the bank from the referee and credited on said note and same was reduced to approximately $800. On or about October 28, 1931, plaintiff bank called on Mr. Godwin for a new note, which, after some negotiations, was given, and the note was signed by C. Godwin, but was not signed by J. E. Cruse. On February 2, 1932, the referee in bankruptcy paid to the plaintiff bank a second dividend of $111.40, which was credited on the said $800 note, and plaintiff below brings suit for the balance due thereon. The defendant, in due time, filed his answer alleging, among other things, that at the time he signed the original note of $1,000, he signed in the capacity of surety; that the plaintiff bank represented to him that it held as collateral, certain notes belonging to J. E. Cruse to secure said $1,000 note, and that said notes

were of the face value of $2,500; that the cashier of said bank showed the defendant these notes, called off the amounts and names, and stated that the notes were collectible and worth 100 cents on the dollar. and that same were up as collateral to the said original note; that relying upon these representations, the defendant signed said $1,000 note as surety; that later, when the defendant signed the $800 note sued on herein, the said cashier of plaintiff bank represented that he still held the said collateral notes as security, and thereupon, relying upon said representations, the defendant signed the note sued on herein. Defendant further alleges in his answer that the said representations were fraudulent and made for the purpose of inducing the said defendant to sign the said notes; that the said collateral, if collected, would have been sufficient to satisfy the said note, but that same was either relinquished, misapplied, or that plaintiff bank now holds same, and that it should be required by the court to make an accounting of said collateral security. To the answer of the defendant below, the plaintiff filed a general denial. The cause was submitted to the jury and the jury found for the defendant.

Plaintiff in error contends that the trial court erred in overruling the general and special demurrers of the plaintiff to the answer of the defendant below. After examining the said answer of the defendant, we think he states a defense to the action. This brings us to the consideration of the sufficiency of the evidence and whether the court erred in its instructions to the jury.

The defendant testified that the payee told him he had various notes belonging to the principal, and showed the notes to the defendant and read off the names and the amounts and represented that these collateral notes were already in his hands as security for the principal note, and that they were placed with the payee by the principal as collateral to secure the $1,000 note, which the defendant was asked to sign, and that by reason of these statements and representations, the defendant signed as surety, and without which he would not have signed; that later, the defendant signed the renewal note sued on herein, believing at said time that the collateral notes were still intact, and the payee so represented. The evidence of the defendant is corroborated in part by other witnesses. The cashier of the plaintiff bank denies that he made any such representations or state-

ments in regard to collateral securities at the time the original note was signed by the surety, and the principal also testified that nothing was said about collateral securities being put up. Plaintiff admits that the money advanced on the original note was paid to J. E. Cruse, principal, and that C. Godwin, surety, received no part of the said money. We think, from the evidence, that there is little or no contention as to the capacity in which C. Godwin signed the note. That all the parties to said transaction knew at the time and were fully aware that C. Godwin signed said original note as surety. After analyzing the pleadings and the evidence in this case, and after stripping it of all the immaterialities, it resolves itself into but one issue—fraud and misrepresentation on the part of the payee.

On the question of fraud and misrepresentation, the trial court instructed the jury as follows:

### Instruction No. 3.

"When you come to writing your verdict, if you should find that the cashier falsely represented to the defendant that he had the collateral notes of Cruse on hand sufficient to secure the indebtedness, you should simply find for the defendant. If you find that the cashier made the statement to him that he had collateral notes sufficient to secure the indebtedness and that the bank has allowed the notes to go elsewhere and hasn't applied them to this indebtedness, then you will allow the defendant credit on the indebtedness for such amount as he has been damaged by reason of the bank's not keeping the collateral as security for this indebtedness. If you find there was no such statement made to Mr. Godwin by the cashier, you will find for the plaintiff for the full amount sued for with interest.

"Excepted by the plaintiff. Exception allowed."

### Instruction No. 4.

"The law of this state is that where a man signs a note, even though there is fraud and deceit in procuring it, or where there is a failure of consideration, if the maker of the note, with knowledge of the fraud, renews the note, he waives the fraud or the other defects in it. But if at the time he renews the note he doesn't know of the fraud or doesn't know of the defect, or if promises are renewed or statements are renewed which would be calculated into misleading him into signing the renewal note, and he renews it, he hasn't waived them.

"Excepted to by plaintiff. Exception allowed."

We think the trial court fairly instructed the jury on the law of suretyship as applied

to the facts in the case. The jury found for the defendant on this issue. While the evidence is conflicting, yet we believe that the evidence is sufficient to support the verdict.

We have examined the cases cited in the brief of the plaintiff in error on its theory of the case, but do not believe they are in point with the facts in the case at bar. In the case at bar, there is no contention that a promise or an agreement was made between the bank and the defendant to put up certain collateral securities at some future date, but the testimony on the part of the defendant shows that the collateral security had already been put up and was attached to the original note, which was a fact then existing and not an agreement to put up collateral security at some future date, and, under these facts, it would in no way vary the terms of the written instrument, for the reason that the representations complained of were with reference to collateral security that had already been put up to secure the principal indebtedness.

Counsel for appellant cites the case of Haffner v. First National Bank of Seiling, 152 Okla. 169, 5 P. (2d) 351, on the proposition that where one gives a note in renewal of another note, with knowledge of a partial failure at the time of the consideration for the original note, or false representation by the payee or his agent in procuring such note, he waives such defense, and cannot set it up to defeat recovery on the renewal note. On this point, the defendant testified in substance that, at the time he signed the renewal note, he was not aware of the false representations, and that the payee represented that the collateral notes were still up as collateral on the original note and intact. This matter was submitted to the jury under instruction No. 4, and the jury passed upon that question.

Section 9630, O. S. 1931, provides:

"A surety is exonerated:

"First. In like manner with a guarantor.

"Second. To the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security; or,

"Third. To the extent to which he is prejudiced by an omission of the creditor to do anything, when required by the surety, which it is his duty to do."

Section 11357, O. S. 1931, provides:

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable. * * *"

In the case of Rice et al. v. Jones, 102 Okla. 30, 225 P. 958, this court said (quoting from the case of First National Bank of Poteau v. Allen, 88 Okla. 162, 212 P. 597):

"Under the Negotiable Instruments Law (section 4102, Rev. Laws 1910), the payee in a promissory note cannot be holder in due course."

This rule is also laid down in the case of Strother v. Wilkinson, 90 Okla. 247, 216 P. 436, and it is well settled by the court.

In the case of Strother v. Wilkinson, on page 249 of Okla. Reports, the court, in its opinion, says:

"We are of the opinion that, since the evidence shows that Barbara K. Strother executed the notes in controversy as surety, it was competent to prove that the plaintiff had prejudiced the surety by acts which would naturally prove injurious to the remedies of the surety, and since one of the rights of the surety is to be subrogated to the rights of the principal, as to the rights of the payee as against the principal, and the property of the principal held by the payee as security for the note of the plaintiff in this case had been released, the surety's rights would have been prejudicially affected."

We think, where the payee induces a surety to sign a note by representing that he holds collateral in the form of notes belonging to the principal, in various amounts and values, and the surety, relying on said representations, signs the principal note as surety, and it later develops that the creditor either did not have any collateral or that he relinquished same or misapplied the securities without the knowledge or consent of the surety, the surety is exonerated thereby to the extent to which he has been injured. It is the duty of a creditor, having received collateral property of the principal, to account for it, and it is his duty to appropriate such property to the debt for which the security was given. If the creditor fraudulently incumbers, conceals, misapplies or relinquishes the collateral security of the principal, or having received securities for the debt for which the surety is bound, applies it to a purpose other than the satisfaction of that debt, the surety is thereby discharged to the extent of the value of the security so misapplied, incumbered, concealed or relinquished, unless the surety consented to the acts of the creditor. We think it is a fraud on the surety where

the creditor, to induce the surety to sign the note of a principal, falsely represents that he holds collateral of the principal to secure the principal note, and where such fraud is perpetrated by the creditor, the surety thereon would not be liable. In such case, the general rules relating to contracts in case of fraud would apply.

In 50 C. J., p. 53, sec. 90, this general statement was made:

"In accordance with general rules, fraud sufficient to entitle a surety to avoid his obligation, may consist of any false representation of material fact, made with knowledge of its falsity and with intent that it shall be acted on by the surety, and except for which the relation might not have been entered into." (See cases there cited.)

And in 50 C. J., p. 52, sec. 88, is the following statement:

"General rules as to the essentials and effect of fraud apply to contracts of suretyship. A contract of suretyship imports entire good faith and confidence between the parties in regard to the whole transaction; and, therefore, where a surety is induced to enter into a suretyship contract by fraud or fraudulent representations or concealments, on the part of the creditor or obligee, or of the principal obligor or a third person, with the obligee's knowledge or participation, as to some fact or circumstance materially affecting the surety's liability, such fraud operates to release the surety from liability on his undertaking, unless, under the circumstances, the surety is negligent in relying on the representations and in failing to make inquiries. Such fraud entitles the surety to rescind the contract, and to have it canceled so far as he is concerned; and to withdraw the security deposited with the creditor, or, if the same has been converted, to recover its value." (See cases there cited.)

We think the issues in this case were properly submitted to the jury under the instructions of the trial court, and the jury being the judges of the facts and the weight of the testimony, this court will not disturb the verdict. The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys R. F. Shutler, T. R. Blaine, and Vancil K. Greer in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Shutler and approved by Mr. Blaine and Mr. Greer, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.