**Chicago Bridge & Iron Company, a Corporation, Plaintiff-Appellant, v. Reliance Insurance Company, a Corporation, Defendant-Appellee.**

**Gen. No. 52,925.**

First District, First Division.

January 13, 1969.

Winston, Strawn, Smith & Patterson, of Chicago (Calvin Sawyier, Richard A. Barton, Robert G. Lane and Charles O. Ziemer, of counsel), for appellant.

Dent, Hampton & Doten, of Chicago (John P. Hampton, Roger D. Doten, Louis Linten Dent and Edward P. McNeela, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The Chicago Bridge & Iron Company (hereinafter sometimes called "plaintiff"), as subcontractor to Taheny Brothers Company (hereinafter sometimes called "Taheny"), filed suit against defendant Taheny as general contractor to the Chicago Transit Authority and against Reliance Insurance Company (hereinafter sometimes called "Reliance") as surety for the general contractor on a payment and performance bond given by Taheny to the CTA pursuant to sections 1 and 2 of the Payment Bond Statute (Ill Rev Stats, c 29, §§ 15, 16). In its four-count complaint, plaintiff sought to recover from the defendant the sum of $30,200.50 for work and material supplied by the plaintiff in erecting a water tank at facilities being constructed by the CTA in Forest Park, Illinois.

The pertinent facts alleged in the Complaint are that the plaintiff had received a subcontract from the general contractor, Taheny Brothers Company, for building an elevated water storage tank. The subcontract incorporated the provisions of the prime contract by reference, and those provisions required the furnishing of lien waivers as a condition precedent to a right to payment. The plaintiff had completed most of the work required by the subcontract prior to the time that the principal contractor was declared to be in default by the CTA, and was at that time entitled to payment of $30,200.50, for which it had given "lien waivers" to Taheny as required by its subcontract. Taheny was paid by the CTA for that portion of the project represented by the subcontract work, but the plaintiff was never paid by Taheny.

In Count IV of the plaintiff's complaint it was alleged that under and by virtue of the performance and payment bond executed by the defendant, Reliance Insurance Company, said defendant was obligated to pay plaintiff's claim. Reliance moved to strike Count IV and to dismiss plaintiff's suit against it on the ground that plaintiff executed a partial release of lien of its claim to the general contractor and was, therefore, precluded from recovery against the bonding company. An order was entered striking Count IV of the Complaint and plaintiff's suit against Reliance was dismissed. The order recited that plaintiff elected to stand on Count IV and that "[t]here is no just reason for delaying enforcement or appeal of this Order." On the bottom of the order appears the notation of the trial judge to see Board of Education v. Hartford Accident & Indemnity Co., 60 Ill App 2d 320, 208 NE2d 51. This appeal involves only one defendant, the bonding company.

The special statute here involved is found in sections 1 and 2 of chapter 29 of the Ill Rev Stats (hereinafter referred to as the Payment Bond Statute) and reads, in part pertinent to the issues raised in the case at bar, as follows:

> "§ 1. All officials . . . of this State, or of any political subdivision thereof in making contracts for public work . . . shall require every contractor for such work to furnish, supply and deliver a bond . . . to the political subdivision thereof entering into such contract . . . with good and sufficient sureties, and in an amount to be fixed by said officials . . . and such bond, among other conditions, shall be conditional for the payment of material used in such work and for all labor performed in such work, whether by subcontractor or otherwise.
>
> "Each such bond shall be deemed to contain the following provisions whether such provisions be inserted in such bond or not:

"The principal and sureties on this bond agree to pay all persons, firms and corporations having contracts with the principal or with subcontractors, all just claims due them under the provisions of such contracts for labor performed or materials furnished, in the performance of the contract on account of which this bond is given, when such claims are not satisfied out of the contract price of the contract on account of which this bond is given, after final settlement between the officer, board, commission or agent of the State or of any political subdivision thereof and the principal has been made."

"§ 2. Every person furnishing material or performing labor . . . as a sub-contractor for any contractor . . . where bond shall be executed as provided in this Act, shall have the right to sue on such bond . . . provided, however, that this Act shall not be taken to in any way make the State, or the political subdivision thereof entering into such contract, as the case may be, liable to such sub-contractor, materialman or laborer to any greater extent than it was liable under the law as it stood before the adoption of this Act. . . ."

The plaintiff informed us that the specific purpose of this appeal is to challenge the validity and general applicability to public construction projects of the decision of the Appellate Court for the Third District in the case of Board of Education v. Hartford Accident & Indemnity Co., 60 Ill App2d 320, 208 NE2d 51, "and to establish that in the circumstances under which public improvement construction contracts are customarily carried on, at least in the metropolitan Chicago area, the required bond guaranteeing payment by the general contractor to subcontractor applies whether or not the subcontractors have executed so-called lien waivers for delivery to the owner-municipality."

It is the plaintiff's contention that the bonding company received premiums for writing a bond under which it unequivocally guaranteed that the general contractor would pay each subcontractor for the latter's work. "The point is that the insuring of the honesty of the general contractor in paying over to the subcontractor is not the responsibility of the subcontractor, but is precisely the risk that the bonding company undertook in writing this payment bond with the general contractor as its principal and the subcontractor as beneficiary." Furthermore, the plaintiff argues, the purpose of the Payment Bond Statute is to protect subcontractors and the only time they need protection is when they have given lien waivers in the customary practice of the industry. It is the position of the plaintiff that the loss of the subcontractor's lien rights is clearly made immaterial under the statute by the express provision that the statute operates to require payment by the surety to subcontractors "when such claims are not satisfied out of the contract price of the contract on account of which this bond is given."

In Board of Education v. Hartford Accident & Indemnity Co., 60 Ill App2d 320, 208 NE2d 51, the Appellate Court affirmed a judgment in favor of the bonding company stating:

"Defendant, Hartford, . . . by reason of the relationship of the parties here as surety and assured, had a right exercisable at any time, to pay plaintiff's claim and to be subrogated thereby to its rights of lien against public moneys in the hands of the School District. By extinguishing this right through the delivery of partial waiver certifying payment, which induced the release of public moneys, as plaintiff intended, plaintiff is estopped by its own conduct, pro tanto, from recovering against Hartford."

60 Ill App2d 320, 324, 208 NE2d 51. There, as here, the subcontractor argued that the Payment Bond Statute provided an additional remedy independent of lien rights and that public policy required sureties on statutory bonds to satisfy claims of subcontractors, notwithstanding the execution of lien waivers. The Appellate Court concluded, however, and we agree, that the statute does not contemplate liability in the case where a claimant has voluntarily prejudiced the rights of the surety.

█ Plaintiff concedes that one of the undeniable general rules of equity is that a surety is released to the extent that the creditor *voluntarily* releases a security for the debt to which the surety might have been subrogated. Plaintiff, however, disagrees with Hartford that a security for the debt was released by the waiver of the lien. "This conclusion is mere abstraction, quite contrary to the actual legal and factual situation. For the subcontractor's so-called lien is, as a practical matter, illusory to begin with under the manner in which public construction is customarily carried on, as alleged in the Complaint." They point out that the only construction lien in respect to public improvements is given to subcontractors. It is urged that the subcontractor, however, has no legal claim to payment unless and until he tenders lien waivers. This the plaintiff maintains is the customary practice in the industry and is known to the bonding company. Thus, the subcontractor's lien rights are necessarily waived in the act of establishing any claim to payment at all. Plaintiff concludes that the contention of the bonding company that a security was released by plaintiff to the bonding company's prejudice is only an abstraction, "not an actual, substantial prejudice that would bring into play the general equitable rule of the surety being released *to the extent* that his security has been *materially prejudiced* by the *voluntary* action of the creditor."

Plaintiff also would have us reject the decision in the Hartford case on the grounds that it is a decision from a district outside a large city like Chicago where the custom and usage might be different and that matters presented in the instant case were not presented in Hartford for consideration. We are not so persuaded. From a reading of Hartford we believe that the Appellate Court considered the same contentions made by the plaintiff in the case at bar, and concluded that plaintiff released substantial lien rights given under section 23 of the Mechanics' Lien Act (Ill Rev Stats, 1967, c 82, § 23). The general contention of the plaintiffs might be more skillfully pleaded in the instant case, but basically the sole issue in both cases is the voluntary waiver by the subcontractor of his lien. We have no reason to believe that the Appellate Court in Hartford did not take into consideration the conditions that exist between subcontractors and contractors in their custom and usage of executing waiver of liens to the general contractor before payment.

We do not have here a situation where a general contractor refuses or is unable to pay the subcontractor. In that situation the subcontractor could refuse to sign a waiver of lien preserving his rights under the Payment Bond Statute and thus could avoid injuring the surety. The statute does not contemplate liability in our judgment, however, in a case where a claimant has voluntarily prejudiced the rights of the surety.

Plaintiff states that the argument made by Reliance Insurance Company was made and rejected in Prepakt Concrete Co. v. Fidelity & Deposit Co. of Maryland, 393 F2d 187 (7th Cir 1965). In that case Prepakt Concrete Company was a subcontractor to Mid-Continent who in turn was a subcontractor for Goethe Building Corporation, the general contractor. The project involved the construction of a high-rise apartment building on

property owned by Continental Illinois National Bank, as trustee. Fidelity and Deposit Company of Maryland furnished a labor and material bond for Mid-Continent. In Prepakt the plaintiff partially waived its lien at Mid-Continent's request in contemplation of receiving a partial payment. The waiver was delivered to Goethe and Continental Illinois National Bank with a letter of explanation that Prepakt was not paid. The Court of Appeals rejected Fidelity's argument that the release of money was motivated by reliance on the plaintiff's waiver, thus depriving Fidelity of that amount which otherwise would have been available to mitigate the surety's losses. The Court held that when Goethe paid the money it knew that Prepakt had not been paid and the statement that Prepakt had received the money was not true. "It also knew that the waiver was not an effective release of the lien on the funds due under the contract. We think Goethe took the risk that Mid-Continent might not pay Prepakt and should have looked to the proper application of the money it paid to Mid-Continent." We have concluded that Prepakt is inapposite to the facts in the case at bar. Also, it does not appear in the opinion of the Prepakt case that the case of Board of Education v. Hartford Accident & Indemnity Co., 60 Ill App2d 320, 208 NE2d 51, was considered.

In 50 American Jurisprudence, paragraph 109, page 976, the rule is stated:

"§ 109. Generally.—A surety is entitled to be subrogated to the benefit of all the securities and means of payment under the creditor's control, and so, in the absence of assent, waiver, or estoppel, he is generally released by any act of the creditor which deprives him of such right. The creditor must for a surety's benefit apply to his debt all moneys and securities of the principal within his control which he has the right to apply, and if he voluntarily

surrenders or releases the same, the surety is discharged pro tanto. . . ."

Plaintiff in the instant case had an inchoate lien on certain "public funds" held by the Chicago Transit Authority for materials furnished and labor performed as a subcontractor in the construction of the water tank. The result of the execution of the release of lien was the loss of plaintiff's lien rights. We do not agree that the lien rights were "illusory" or that they were only an "abstraction." We believe that the voluntary release of the security materially prejudiced the rights of the bonding company. We are satisfied that Board of Education v. Hartford Accident & Indemnity Co., 60 Ill App2d 320, 208 NE2d 51, is squarely in point and is applicable here.

For the reasons stated, the judgment of the Circuit Court is affirmed.

Affirmed.

ADESKO, P. J. and MURPHY, J., concur.