WISCONSIN ELECTRIC SALES COMPANY, Respondent, vs.
LANGDON, Defendant, and FIDELITY & DEPOSIT COM-
PANY OF MARYLAND, imp., Appellant.

· *December 10, 1926—January 11, 1927.*

*Schools: Building contracts: Statutory performance bonds: Settle-
ment by district upon contractor exhibiting receipts of subcon-
tractors: Estoppel: Release of surety: Evidence: Sufficiency:
Waiver: Presumption: That subcontractor knows condition of
bond.*

1. A waiver is the voluntary relinquishment of a known right.
   p. 650.
2. A subcontractor employed by a principal contractor engaged in
   the erection of a high school in this state is presumed to know
   the provisions of the bond given by the contractor, under sec.
   289.16, Stats. p. 650.
3. Where a subcontractor gave the principal contractor a receipt
   for the amount due the former under his contract to enable
   the latter to effect a final settlement with the school board, the
   subcontractor, by an acknowledgment of payment, waived his
   claim against the surety on the bond of the principal con-
   tractor. p. 650.
4. Public officers are presumed to have done their duty until it
   otherwise appears. p. 650.
5. Under such circumstances the subcontractor was estopped to set
   up a claim against the surety on the statutory bond, where the
   principal contractor obtained a full settlement with the school
   board upon exhibiting his receipts, and subsequently became
   insolvent. p. 650.
6. A finding that the surety was not prejudiced by the giving of
   the receipt by the subcontractor to the principal contractor for
   his claim is *held* not sustained by the evidence, where the sums
   received by the contractor from the school board on the
   strength of the receipts were not shown to have been paid to
   the subcontractor, who would have claims against the surety,
   and where the contractor was not shown to have been in-
   solvent at that time, and was not adjudicated a bankrupt for
   nearly two years afterwards. p. 651.

APPEAL from a judgment of the circuit court for Rock
county: GEORGE GRIMM, Circuit Judge. *Reversed, with di-
rections.*

Appeal from a judgment against the *Fidelity & Deposit Company* in the sum of $1,521.58. This was an action on a surety bond against the defendant *Langdon* as the principal contractor, and the defendant *Fidelity & Deposit Company* as surety, which bond was given pursuant to sec. 3327*a* (now sec. 289.16) of the Statutes, to the board of education of joint school district No. 1 of the village and town of Oregon, Dane county. The case was tried before the circuit court without a jury. The defense of the surety company was that the plaintiff subcontractor had given the contractor a receipt in full of its claim against the principal contractor, which receipt was to be used, and was used, by the principal contractor in settling his claim with the school board; that by reason of such receipt the school board settled with the contractor, and paid such contractor the funds reserved by the contract to be paid after final settlement by the principal contractor of all claims; that the school board paid such sum relying upon the said receipt, and thereby the plaintiff was estopped from making claim against the school board or the surety, and further, that the giving of such receipt operated as a waiver of plaintiff's claim against the school board or the surety company.

The trial court made its findings of fact, and among others the following, to which the defendant surety company duly excepted:

"That no money was paid to said *Langdon* at the time said receipt was so filed; that said receipt was not obtained or filed at the request of said board of education; . . . that the defendant *Fidelity & Deposit Company* was not prejudiced or damaged in any way by reason of the existence of said receipt; that the plaintiff is not estopped to assert its claim against the defendant *Fidelity & Deposit Company;* that the said board of education did not on the faith and strength of said receipt surrender funds held by it for the protection of the defendant *Fidelity & Deposit Company.*"

For the appellant there was a brief by *Van Dyke & Hauxhurst* of Milwaukee, and oral argument by *Douglass Van Dyke*.

For the respondent there was a brief by *Jeffris, Mouat, Oestreich, Avery & Wood* of Janesville, and oral argument by *O. A. Oestreich*.

CROWNHART, J.    In May, 1922, Hayes & Langdon, a partnership, contracted with the board of education of joint school district No. 1 of the village and town of Oregon, Dane county, for the erection of a high school building for $50,250, plus $1,320 for electric wiring, payment to be made as follows:

"Eighty per cent. of the proportionate value of the work done monthly, as the work progresses, on the estimates of the superintendent, and the remaining twenty per cent., together with all other sums, if any, due on this contract, shall be paid on the completion and acceptance of the entire work herein contracted for, as soon thereafter as the said superintendent and the party of the second part are satisfied that the work is completed, and are assured against the existence of any mechanics' liens or the claims and demands against the party of the first part of any subcontractor for work performed or materials furnished for and on said building."

The respondent, on June 6, 1922, entered into a subcontract with said principal contractor for the electric work on said building for $1,400. The appellant, as paid surety, on June 7, 1922, furnished a surety bond guaranteeing the due performance of the contract on the part of the principal contractor, pursuant to sec. 3327a (now sec. 289.16), Stats. 1921.

Said partnership entered upon the performance of said contract, but in July, 1922, Hayes died and the defendant *Langdon* continued with the contract as surviving partner.

The respondent, under its subcontract with the principal contractor, completed its contract, and thereafter, on the 1st

day of February, 1923, gave to the defendant *Langdon* a receipt in full for the amount due it under said contract. As to the purpose of giving said receipt, one of respondent's officers, Mr. Kennedy, testified:

"*Mr. Langdon* said that he had got the job near completion and he would be looking for a final settlement very shortly, and asked me if they asked for a receipt, if I would give him one in order that he might get his final settlement. I told him I would, and I immediately gave it to him. He did not say that the board had asked for the receipt, but said if they did."

There was no consideration for such receipt other than as above stated. The contractor, *Langdon,* testified that his purpose in securing such receipt was to use it at the time of the final settlement, for the purpose of causing the school board to believe that the claim of the plaintiff had been paid.

Mr. Lytel, treasurer of the school board, on March 23, 1923, wrote to the surety company asking if it would be all right to settle with the contractor, and received the following reply:

"*Re* Bond No. 3010014—Hayes & Langdon. Replying to yours of the 23d inst., wish to say that as long as the above named are willing to submit to your board receipted bills for all labor and material, I see no reason why your board should not settle with them now."

On April 30, 1923, after said receipt of the respondent had been filed with the board of education, the board made final settlement with *Langdon* and paid him the sum of $4,093.83. No representative of the appellant surety company was present at that settlement. The board of education consisted of, George H. Litts, president; E. S. Kramer, secretary; and J. F. Lytel, treasurer. Mr. Lytel testified that at the time of the final settlement he believed the contractor, *Langdon,* produced receipts from the various subcontractors on the contract, and assured the witness that these receipts

were for all of the items. Among them was the receipt of the respondent. He further testified that, relying on such receipts, he made final settlement with *Mr. Langdon* and paid him the balance due. He testified further that at the time of making the final settlement he supposed he had receipts for all claims of subcontractors and for all lumber and material, with the exception of one unfinished job for which payment was withheld. Lytel further testified that the appellant called for receipts before final settlement for all labor and materials, and those were the receipts that he tried to get, and which he assumed he had secured, before settlement. The other officers of the school board did not testify. *Langdon* testified that no member of the board asked him to file receipts, but that statement was qualified by the following question and answer:

"*Q*. What is your explanation of how you happened to produce such receipts as you did produce?

"*A*. I had those receipts on file at the job. They asked me if I had receipts for those paid for so far and I said I did. I talked with Mr. Kramer. I said after he looked at them I wanted them returned to our file. That is the way I turned the receipts over to him."

The receipt given by the respondent to *Langdon* was by him exhibited to and filed with the board of education prior to the settlement on April 30, 1923.

The defendant *Langdon* failed to pay the respondent's claim. The respondent did not commence action against the appellant surety company until February 1, 1924, and *Langdon* was not adjudged a bankrupt until March, 1925.

The bond being a statutory requirement, it will be presumed that the respondent knew of its provisions. It is plain that the respondent knew, when it gave the receipt to *Langdon* acknowledging full payment of its claim under its subcontract, that it did so for the purpose of inducing the board of education to pay *Langdon* the money that would

otherwise be a claim against the school board and the surety company in favor of the respondent. It is equally clear that the releasing of the amount which the school board was required to withhold from the contractor, and the paying of the same over to the contractor before the contractor had settled the respondent's claim, was prejudicial to the interests of the surety company. Such receipt operated as a waiver by the respondent as to any claim which it might have under the surety bond against the appellant.

A waiver is the voluntary relinquishment of a known right. The respondent is presumed to know the law whereby the surety company was bound to save the school board harmless by reason of the failure of the contractor to perform its contract, and, knowing the law, it voluntarily acknowledged payment of its claim against the principal contractor for the purpose of inducing the school board to surrender to the contractor funds that would not otherwise be payable to the contractor until he had paid plaintiff's claim. This constituted a waiver of his claim against the surety. *Somers v. Germania Nat. Bank,* 152 Wis. 210, 219, 138 N. W. 713.

The school board had before it the receipt which the respondent had given to *Langdon,* in full of its claim, and it must be inferred that the school board was influenced to make full settlement and payment to the contractor by reason thereof. Public officers are presumed to have done their duty until it otherwise appears. This being so, the giving of such receipt worked an estoppel on the respondent against making any claim against the surety company for which it had acknowledged payment.

The respondent contends that *Langdon* used all the funds he received on final settlement from the school board in payment of claims which would otherwise have been claims for which the appellant would have been liable under its bond,

and for that reason the appellant was not prejudiced by the filing of the receipt and the payment to the contractor of the balance due under the contract. The trial court so found. We have studied the evidence with care, and cannot find that it supports that contention or finding. The settlement was on April 30, 1923, whereby *Langdon* received $4,093.83, and it nowhere appears in the evidence that this sum or any part thereof was paid by *Langdon* to claimants to whom the appellant was liable under its bond. But conceding some such payments had been made, that would not show that appellant was not prejudiced. *Langdon* later became insolvent, but it does not appear that he was insolvent on April 30, 1923, or that plaintiff's claim would not have been paid had it not acknowledged payment thereof. The receipt was given to influence the board in making final payment to *Langdon;* it was so used by *Langdon,* and the school treasurer testified that the school board relied thereon. The other two members of the board were not called as witnesses.

We conclude that the court was in error in finding that appellant was not prejudiced by the giving of the receipt by plaintiff to *Langdon,* and that he had not waived his claim against the appellant, nor was not estopped from asserting it.

*By the Court.*—The judgment is reversed, with directions to enter judgment in favor of the appellant dismissing the plaintiff's complaint.