[Civ. No. 17423. First Dist., Div. One. Dec. 6, 1957.]

FLORIDA FRANKLIN LEE, Appellant, v. MERCHANTS COLLECTION ASSOCIATION OF OAKLAND (Individual's Fictitious Name) et al., Respondents.

Irving M. Liner for Appellant.

Harry M. Gross for Respondents.

BRAY, J.—The questions raised by plaintiff's appeal from a judgment in her favor in this action for conversion of her automobile are:

1. In estimating plaintiff's damage were the deductions made by the court proper?

2. Did the chattel mortgagee waive its lien?

3. Was the municipal court judgment res judicata?

4. Was plaintiff entitled to punitive damages?

5. Should plaintiff have been allowed interest?

6. Rejection of evidence.

## RECORD

Defendant* operating a collection agency levied execution upon plaintiff's automobile under a judgment which was subsequently set aside for lack of service. It was stipulated that there was a conversion as of the date of the purported execution sale. The court found the market value of the automobile to be $4,300 (the car sold for $3,640 at the purported execution sale) and held that there should be deducted therefrom the following sums: satisfaction of judgment, $684.50; upholsterer's lien, $228.80; chattel mortgage, $2,250; total $3,163.30, leaving a balance of $1,136.70. There was on deposit in court a marshal's warrant for $511.47 which was the net amount received by the levying officer from the sale of the car after paying the above amounts. The court ordered this sum to be paid plaintiff, deducting it from the $1,136.70, and gave plaintiff judgment for the balance of $625.23 together with interest on the last mentioned sum from the date of conversion.

1. *Deductions.*

Plaintiff contends that the amounts paid by defendant were not deductible for two reasons: (a) defendant did not plead any setoff or counterclaim, and (b) as the levy and sale were made under a void judgment, sums paid by the levying officer to clear title and to pay the judgment thereafter obtained against plaintiff could not be deducted from the value of the car.

(a) The deductions were not made as a setoff or counterclaim. The issue in the case was the damage caused plaintiff by the conversion. As said in *Ward* v. *Sherman* (1909), 155 Cal. 287, 291 [100 P. 864], where the defendant took possession of a cattle ranch under a judgment thereafter reversed and the court gave defendant judgment for moneys expended in taking care of the ranch and cattle in excess of moneys received from sale of cattle, the victim of a conversion is entitled to be placed as nearly as possible in the condition in which he previously stood, and the defendant must account for the property with his liability being measured by the prudent businessman rule applicable to trustees. In view of the court's finding of lack of malice the following

---

*Although defendant George B. Fink is the owner of defendant Merchants Collection Assn., the answer was filed by him individually and not under his firm name. The judgment was likewise against him individually.

quotation from 4 California Jurisprudence 2d, Appeal and Error, section 676, appearing in *Stockton Theatres, Inc.* v. *Palermo,* 121 Cal.App.2d 616 [241 P.2d 54], is applicable (pp. 619-620) : " 'The law proceeds upon the theory that, in equity, the party who receives money or property in good faith under an erroneous judgment, thereafter reversed, should be required to restore what he has received, and not upon the theory of a supposed wrong committed. Restitution must be made of all that was received under the erroneous judgment, but no further liability should be imposed. After reversal the respondent stands in the position of a trustee for the appellant of the property obtained under the judgment. He must handle that property as an ordinarily prudent man of business would, and is not chargeable with more than he received.' " While these cases dealt with erroneous judgments, we can see no reason why the same rule should not apply to void judgments, particularly where, as here, the evidence supports the court's finding that defendant did not act maliciously nor was he guilty of fraud and deceit in the taking of the default judgment and levying execution thereon. Plaintiff is not entitled to be placed in any better position than she would have been in had the conversion not taken place. Thus, the court was correct in deducting the liabilities which existed against the automobile at the time of the conversion. In other words, the value of the car to plaintiff then was its actual value less the liens upon it.

(b) Payments under void judgment.

The upholsterer's lien was paid off by the marshal from money received from defendant and later repaid to defendant from the sale price. The chattel mortgage was paid from a fund in which had been deposited the moneys advanced by defendant to the marshal to pay the mortgage and the moneys received by the marshal from the sale. Even though this sale resulted from a judgment thereafter found to be void, plaintiff received the benefit of those payments. Plaintiff's property was subject to those liens and plaintiff would have been required to pay them.

 The deduction of the $684.50 raises a problem. Finding VI gives as one of the payments made by the marshal out of proceeds of the execution sale on "the judgment hereinafter referred to (a) Satisfaction of Judgment $684.50." Finding VII finds that the judgment (apparently the judgment last referred to) and the execution issued thereon were void. Finding VI states that the marshal paid $684.50 to

satisfy the said writ (the void one). Thereafter, defendant obtained a valid judgment against plaintiff for a higher amount and claims the right to keep said $684.50 in satisfaction thereof. While defendant did not plead plaintiff's indebtedness upon which the judgment was based as a setoff, his answer did set forth plaintiff's indebtedness to him in the sum of $519.50 (apparently the principal upon which the $684.50 judgment was based). To require defendant to return said sum to plaintiff would result in an unjust enrichment of plaintiff. Moreover, the automobile had been seized originally under an attachment. Thus the value of plaintiff's interest in the car at the time of sale was reduced by the lien of that attachment. Therefore, the statement in the findings that the money was paid in satisfaction of the void judgment is unimportant. While it was so paid it became a credit upon the higher judgment later obtained. As we have said, the value of plaintiff's interest in the automobile was reduced pro tanto.

Again, the issue is not whether the marshal had the right under a void judgment to pay off these liens. The issue is how much plaintiff was damaged by the conversion of her automobile. She did not attempt to recover her car which had been sold at a void sale. She elected to let the sale stand and to sue for conversion, thereby putting in issue the value of her interest in the car at the time of sale. It is rather interesting to note that in her direct testimony plaintiff brought out the fact that the automobile was subject to the upholsterer's claim and the chattel mortgage.

While the court found that it was not true that defendant paid off the third party claim of the mortgagee but that it was paid by the marshal out of the sale proceeds pursuant to the instructions of defendant, the uncontradicted evidence shows that defendant advanced the money to the marshal and he later repaid defendant from the sale proceeds. As said by plaintiff in her opening brief, the marshal was acting as defendant's agent. In advancing the money for the chattel mortgage and the upholsterer's lien defendant was not acting as a volunteer-officious intermeddler, who it has been held would not have the right of subrogation (see authorities cited in *Stein* v. *Simpson*, 37 Cal.2d 79, 84 [230 P.2d 816].) Defendant had an interest in the automobile because of his attachment thereon. Moreover, defendant through mistake believed that by reason of the writ of execution he also had an interest in the car. ''It has been held that where a person discharges a lien not incurred by him on property not his own, but

which he mistakenly believes to be his, [he] is subrogated to the rights of the lienholder." (*Idem*, p. 84.)

Plaintiff attacks the validity of the affidavit and undertaking on attachment claiming that because the signature of the notary public on the attestation clause is a stamped signature rather than one in his own handwriting, the attachment was void.* Assuming, but not deciding, that the attachment was thereby invalidated and that such invalidity may be determined in this collateral action (no motion to set aside the attachment was made in the municipal court) such fact would not affect the situation here. Defendant's mistake, if it was one, in paying prior lienholders, relying on a defective attachment, would not make him a volunteer nor deprive him of his right of subrogation.

2. *Mortgagee's Lien.*

When the marshal attached plaintiff's automobile the mortgagee filed a third party claim. As prescribed by law (Code Civ. Proc., § 689b) the marshal demanded of defendant the payment of the amount of the claim. Defendant then sent check for the amount due but requested the marshal to "hold this pay-off money in trust until the date of the car sale." Defendant's letter stated that the mortgagee would also send an assignment of its mortgage. The next day the mortgagee wrote the marshal, apparently enclosing the pink slip to the car, but no assignment, and stated ". . . it is our desire for you not to pay us off on the 1951 Cadillac . . . until such time as the sale of the car has been completed." Plaintiff contends that by this letter the mortgagee waived its lien. *Kuehn* v. *Don Carlos*, 5 Cal.App.2d 25, 28 [41 P.2d 585], was an action brought by the mortgagee against the mortgagor and the successor in interest of the purchaser at execution sale. The judgment creditor and the mortgagee had agreed that the creditor would either pay the balance due on the mortgage or deliver him the mortgaged airplane on payment of the amount of his judgment plus costs. The mortgagee then delivered the constable a receipt showing payment of the amount due, although no money was actually paid. The constable then sold the airplane free from the mortgage. The sale did not bring enough to satisfy the judgment, let alone the mortgage. The court stated (p. 28): "In this case, if the airplane had been sold for an amount sufficient to discharge the mortgage

---

*See section 8205, subdivision (e), Government Code, which provides: "Any deposition, affidavit, oath or affirmation shall be signed by him [the notary public] in his own handwriting."

indebtedness it appears to be fundamental that the mortgagee could not assert his lien as against the purchaser merely because the judgment creditor failed to pay over the money received from the sale. It is not reasonable that the rule should be any different merely because the judgment creditor failed in the performance of his agreement by neither purchasing the property nor bidding up to the amount of the mortgage indebtedness and thus assuring a sufficient return from the sale to satisfy plaintiff's demand. The conduct of the mortgagee, as disclosed by the record in this case, was so inconsistent with the continued existence of the mortgage lien that we are forced to the conclusion that the lien was waived.''

It should be noted that the opinion discusses the release of the lien as against the purchaser. It, of course, does not hold that the *mortgagor* is thereby released either from the debt or that the lien is released as to him. *Maier* v. *Freeman,* 112 Cal. 8 [44 P. 357, 53 Am.St.Rep. 151], holding that the chattel mortgagee lost its lien by authorizing a creditor of the mortgagor to sell the mortgaged cattle, dealt solely with the effect of such authorization on the creditors of the mortgagor. The mortgagee in our case was not asking to be paid out of the proceeds of the sale. It was merely asking that the moneys then in the hands of the marshal paid to him by defendant as required by law be held until the sale. Whether or not the mortgagee lost its lien as to creditors of the mortgagor is not important here. Plaintiff's debt to the mortgagee was not discharged. Defendant by paying to the marshal the chattel mortgage debt became subrogated to the rights of the mortgagee as against plaintiff mortgagor.

Failure to plead this type of subrogation under the circumstances of this case was not fatal to the court's right to decide that in arriving at a determination of the amount in which plaintiff had been damaged this indebtedness of plaintiff should be deducted.

3. *Res Judicata.*

▉ After obtaining a valid judgment against plaintiff in the municipal court defendant attempted by a motion to tax costs to include in the costs the amount of the upholsterer's lien and the chattel mortgage. The court denied the motion. Plaintiff contends that this ruling is res judicata of the right of the court in this case to consider those amounts in valuing plaintiff's damage. Obviously that ruling could not be res judicata of the issues here. The municipal court properly found that those payments were not ''taxable costs.'' The

issue here is not "taxable costs" but plaintiff's damages. ■ See *Horton* v. *Goodenough*, 184 Cal. 451, 460 [194 P. 34], which holds in effect that for a former judgment to be binding as collateral estoppel it must appear from the record that the issue as to which estoppel is claimed must appear on the face of the record to have been decided and that it does not follow that merely because the issue was made and judgment then had that the issue was determined by the judgment.

### 4. *Punitive Damages*

This was not an action for fraud and deceit. It was for conversion. ■ In order to obtain exemplary or punitive damages plaintiff has to prove that defendant acted with malice. The trial court held that defendant did not so act. Plaintiff contends (1) that the action of the municipal court in setting aside the default judgment was a finding that defendant in obtaining the default did so by fraud and deceit and that therefore the trial court here should have found malice; and (2) that the evidence in this case shows that defendant acted maliciously.

■ (1) Introduced in evidence was the notice of motion to set aside the default.* It stated that the motion would be made on two grounds: (a) that the default was taken without service of summons and complaint on the defendant (plaintiff here) and (b) that the default judgment was taken by fraud and deceit. The notice stated that it would be based on defendant's affidavit on file and on oral or written testimony to be adduced at the hearing. The municipal court's minute order stating that the motion to set aside the default was granted did not state upon what grounds. The affidavit referred to and the proceedings on the motion are not in the record here.

While it is true that ". . . questions of law and of fact actually litigated and determined in the prior action are conclusive between the parties in a subsequent action" (*Braye* v. *Jones*, 129 Cal.App.2d 827, 830 [278 P.2d 29]), that "The final adjudication of an inferior court made within its jurisdiction is binding and conclusive upon a higher court in a subsequent action" (*Todhunter* v. *Smith*, 219 Cal. 690, 695 [28 P.2d 916]), and that on appeal from a judgment the appellate court will sustain the judgment if supported on any

---

*According to statements of counsel in the record this was an additional notice of motion; the first one apparently only contained the ground of lack of service.

theory raised below and sustained by the evidence, the situation here is different. The municipal court made no finding on the issues presented, if more than one was actually presented. While the court could have granted the motion on either issue or both, if actually presented, we have no way of knowing upon what basis it granted the motion. It is impossible to apply res judicata in such a situation.

(2) Plaintiff contends that defendant acted maliciously in causing plaintiff's automobile to be sold under the void judgment. Such contention is based mainly on plaintiff's testimony, which, if believed, would show that the sale was had during the very time that plaintiff had been given an extension of time and after plaintiff had tendered defendant the money due on the void judgment. However, defendant denied specifically plaintiff's story of the transaction with the possible exception that plaintiff may have tendered the amount defendant claimed due on the judgment. This defendant refused on the theory that at that moment he was entitled also to the moneys advanced by him to pay the chattel morgage lien. Even though he was wrong on this theory at the time, such error, if any, would not show malice but only mistake. The court believed defendant's version of the interviews between defendant and plaintiff. We, of course, are bound by the trial court's determination of the credibility of the witnesses. (*Beeler* v. *Plastic Stamping, Inc.*, 144 Cal.App. 2d 306 [300 P.2d 852].) Defendant's version of the transaction supports the court's finding that defendant acted without malice, fraud or deceit.

### 5. *Interest.*

The court allowed interest from the date of conversion on the balance of $625.23 only. We see no error in this. Plaintiff was not entitled to interest on the money which was paid out for her benefit in discharge of the liens, the valid judgment or the amount of the warrant which the bailiff sent plaintiff and which she returned and which was deposited in court.

### 6. *Rejection of Evidence.*

An objection was sustained to a question asked defendant's manager by plaintiff as to whether in preparing to meet the motion to set aside the default made in the municipal court defendant Fink told the manager to hire an investigator.

Plaintiff contended that she was thereby attempting to show the witness' veracity. We fail to see how this question was

772

material. Plaintiff then asked if the witness recalled the instance of the hiring of a certain investigator, and contended that the question went to the issue of malice. The objection was sustained. Plaintiff then offered to show that defendants obtained "another affidavit" from the investigator and paid him $400. It is not clear from the record whether "another affidavit" referred to one dealing with the default matter or one in an entirely different case. There was no contention made in the record that the investigator was hired, if at all, to do anything wrong nor that the affidavit was or was to be false. We find no error in the court's action.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied January 3, 1958, and appellant's petition for a hearing by the Supreme Court was denied January 28, 1958.