Filed 2/5/15  NICO Alloys v. American Metal Group CA2/2
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| NICO ALLOYS, INC., | B251688, B253987 |
| Plaintiff, Cross-defendant, and Respondent, | (Los Angeles County Super. Ct. No. BC466678) |
| v. | |
| AMERICAN METAL GROUP, INC. et al., | |
| Defendants, Cross-complainants, and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Alan S. Rosenfield, Judge.  Affirmed in part and reversed in part.

Morgan, Franich, Fredkin & Marsh, Mark B. Fredkin and Linda MacLeod, for Defendants, Cross-complainants, and Appellants.

Carlsmith Ball LLP, James Polish and Albert H. Ebright, for Plaintiffs, Cross-defendants, and Respondents.

\* \* \* \* \* \*

NICO Alloys, Inc. (NICO) and American Metal Group, Inc. (AMG) both deal in scrap metal. AMG was in the midst of acquiring NICO's stock and inventory when NICO's owners indicated they did not want to go forward with the proposed buyout deal. In response, AMG went into NICO's warehouse and removed over 200 tons of scrap metal. NICO sought and obtained a writ of possession to take back the scrap metal, and thereafter sued AMG and others for conversion and other torts. AMG cross-claimed for breach of the stock and inventory sales contracts. The court ruled for NICO on its claims and on AMG's cross-claims, and awarded $322,923.31 in damages, $83,941 in prejudgment interest, and $740,257.50 in attorney's fees on the cross-claims. AMG appeals these rulings. We affirm in part, reverse in part, and remand for further proceedings to recalculate damages and prejudgment interest, and to considering whether attorney's fees need to be allocated among the claims.

## FACTUAL AND PROCEDURAL BACKGROUND

AMG and NICO are both companies that sell scrap metal, including high-temperature alloys. Howard Misle (Misle) owns AMG's parent company. NICO is co-owned by Larry Levine (Levine) and Denyse MacMillan (MacMillan). In 2010, Misle, Levine and MacMillan signed two contracts designed to allow AMG to acquire NICO after a "try out" period: (1) a put and call agreement, which obligated Levine and MacMillan to sell their stock in NICO, and obligated Misle to buy that stock, for $2.5 million; and (2) an exclusive sales agreement, which granted NICO the exclusive right to hold AMG's inventory of high-temperature alloys on consignment and sell that product to others.

Midway through the "try out" period, Levine informed Misle that he no longer wanted to sell NICO. In response, Misle directed AMG employees and hired laborers to enter NICO's warehouse—over the weekend and without NICO's knowledge—to relocate just over 200 tons of NICO's inventory to AMG's nearby warehouse. Among the AMG employees who participated was Chad Mueller (Mueller), AMG's operations manager and Misle's potential son-in-law.

AMG's unilateral act touched off this litigation. NICO sought and obtained a writ of possession to physically retrieve the scrap metal AMG had taken. AMG subsequently returned much of the scrap metal. NICO also sued AMG, Misle and Mueller for (1) conversion, (2) claim and delivery (replevin), and (3) intentional interference with prospective economic advantage.[1] AMG cross-complained against Levine and MacMillan for breach of the put and call agreement; against NICO for breach of the exclusive sales agreement; and against both sets of defendants for common counts.[2]

The case proceeded to a 15-day bench trial. As to NICO's claims, the court ruled that (1) AMG was liable for conversion, (2) AMG, Misle and Mueller were liable for replevin, (3) AMG did not intentionally interfere with NICO's prospective economic advantage, and (4) AMG did not engage in conduct warranting punitive damages. The court rejected AMG's cross-claims.

The court awarded the following damages to NICO: (1) $600,405 as the retail value of the scrap metal NICO took but did not return; plus (2) $36,462 as NICO's costs of recovering the scrap metal that was taken; plus (3) $140,000 in lost profits; plus (4) $29,360.53 as the amount AMG owed NICO for unpaid employee expenses; plus (5) $23,186 in unpaid interest on loans Levine made to AMG; less (6) $506,490.90 as what NICO owed AMG for scrap metal NICO purchased but had not yet paid for. The court also awarded an additional $83,941.55 in prejudgment interest, calculated as 7 percent of the $600,405 starting from the date the scrap metal was removed from NICO's warehouse; the court did not "set off" the $506,490.90 that NICO owed AMG before calculating prejudgment interest. The trial court made AMG, Misle and Mueller jointly and severally liable for the judgment.

---

[1]    NICO also sued AMG for breach of an oral agreement and breach of fiduciary duty, but voluntarily dismissed those claims.

[2]    AMG initially alleged other claims, but dismissed or abandoned them prior to trial.

NICO, Levine and MacMillan then sought attorney's fees for prevailing on AMG's contract-based cross-claims under Civil Code section 1717[3], as each contract had a provision awarding fees to any "prevailing party." They sought all fees incurred in the litigation, including their conversion and claim-and-delivery claims, except for fees incurred (1) in opposing a writ of attachment, (2) in objecting to the trial court's statement of decision, (3) in litigating Mueller's liability, and (4) in opposing the new trial motion. AMG opposed the motion, arguing that NICO was not the prevailing party on the exclusive sales agreement and that the trial court was required to sort out the fees incurred on the contract-based cross-claims from the fees incurred in NICO's tort-based lawsuit. Without any hearing, the court issued a one-sentence ruling that, without elaboration, awarded NICO all of the fees it requested.

AMG timely but separately appealed the judgment and attorney's fees ruling. We address both appeals in this consolidated opinion.

## DISCUSSION

### I. Liability of Mueller and Misle

#### A. *Claim and delivery (replevin)*

The trial court found that Mueller had acted at the direction of AMG and Misle, but that his position as AMG's "operations manager" meant Mueller had "operational authority over" the scrap metal he was ordered to relocate. Based on these findings, the court ruled that Mueller *was not* liable for conversion, but *was* liable for claim and delivery. Mueller attacks this ruling. Because this question turns on the application of undisputed facts to the law, our review is de novo. (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018.)

In an action for claim and delivery (or replevin), the plaintiff may (1) physically recover the property taken (Code Civ. Proc., § 511.010 et seq.), and (2) collect damages for any property not recovered as well as "damages for detention" of the property (*Id.*, § 667.) (See generally *Simms v. NPCK Enterprises* (2003) 109 Cal.App.4th 233, 241.)

---

[3] All further statutory references are to the Civil Code unless otherwise indicated.

However, an action for claim and delivery lies only against the person or entity who actually or constructively possessed the property at issue. (*Phillips Aviation Co. v. Superior Court* (1966) 246 Cal.App.2d 46, 53.) An agent who held the property for his or her principal is not considered to have been in actual possession. (*Ibid.* [collecting cases].)

In this case, the trial court's finding that Mueller was only acting at the behest of Misle and AMG is a finding that he was acting as their agent. (See § 2295 ["An agent is one who represents another, called the principal, in dealings with third persons."].) Nothing in the record indicates that Mueller was doing anything beyond following the orders of his principal. Indeed, the trial court found that Mueller was not acting for personal gain. The court's reason for holding Mueller liable—and subjecting him to the same damages as for the conversion claim for which Mueller was not found liable—was that Mueller was high up enough in AMG that he could have disobeyed the direct order of Misle. However, Mueller had no greater right—and no greater ability—to disobey his boss than any other AMG employee. Mueller's position in AMG's organizational chart accordingly provides no basis for treating him differently for purposes of "agency." Indeed, if an agent's ability to disobey his principal were enough to preclude agency, there would no longer be any "agents" for the purposes of claim and delivery, and *Phillips Aviation* would no longer be the law. (Accord, *Simonian v. Patterson* (1994) 27 Cal.App.4th 773, 780-782 [fact that person who moves items on another's behalf could refuse to do so is not a basis for imposing liability for conversion].)

We conclude that the trial court erred in holding Mueller liable for claim and delivery (replevin).

### B. *Payroll expenses*

By making Misle and Mueller jointly and severally liable for the full amount of the judgment against AMG, the trial court made Misle and Mueller liable for the $29,360.53 in payroll expenses AMG owed NICO. This payroll debt is AMG's, not Misle's or Mueller's. Imposing liability on them was error.

5

## II.     Damages on NICO's claims

AMG raises three challenges to the trial court's calculation of damages.  We review those calculations for substantial evidence.  (*Baker v. Pratt* (1985) 176 Cal.App.3d 370, 382 (*Baker*).)  In so doing, we """"must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion." [Citations.]'"  (*Ibid.*)

### A.     *Miscalculation of value of inventory*

The trial court calculated the damages reflecting the scrap metal that ultimately went missing from NICO's warehouse in a four-step process:  (1) the court sorted the inventory into different grades (or types) of scrap metal; (2) for each grade, the court calculated the quantity missing as (a) the quantity of scrap metal originally in NICO's warehouse, (b) less the quantity not taken by AMG, and (c) less the quantity AMG eventually returned; (3) the court multiplied the quantity missing by the retail value of that grade; and (4) the court totaled the value for each grade.  AMG argues that the court erred in its calculations of three grades of scrap metal, designated as Items 710, 721, and 722.

There were calculation errors as to each of these three categories.  Items 710 and 722 contain arithmetic errors.  For each, the court did not reduce the original inventory by the amount not taken by AMG.  As corrected, the loss of Item 710 is $12,061 (not $22,456), and the loss of Item 722 is $4,411.00 (not $6,339.30).

Item 721's recalculation necessitates a remand.  For this item, the spreadsheet shows 15,972 pounds of original inventory; 15,972 pounds returned by AMG; and an additional 6,008 pounds never taken.  At trial, MacMillan explained that Item 721 was a lower grade of scrap metal; the extra 6,008 pounds were, in fact, higher-grade scrap metal (such as metal from Item 710) that had been downgraded and allocated to Item 721 because it had been improperly mixed with lower-grade scrap metal.  The trial court declined to give NICO any credit for the 6,008 pounds of downgraded scrap metal.  This was error because it allowed NICO to recover damages for the complete loss of the high-

6

grade scrap, while keeping the downgraded scrap without any credit to AMG. Because we do not know what the price per pound of Item 721 is, we remand for that calculation and the appropriate offset.

### B. Lost profits

The trial court awarded NICO $140,000 in damages for lost profits due to the conversion. AMG argues that this award results in unfair "double counting" because it is based upon the loss of profits to NICO's entire business and thus rests in part upon the loss of profits from not being able to sell the unrecovered scrap metal, but NICO already obtained damages for the loss of sales because the loss of inventory was valued at its *sale* price, not its cost basis. Both parties presented expert testimony on the issue of lost profits: NICO's expert's calculated such damages at $688,000; AMG's, at $12,000. The trial court awarded $140,000.

Substantial evidence supports the trial court's ruling. (*Baker*, *supra*, 176 Cal.App.3d at p. 382 [lost profits are a question of fact reviewed for substantial evidence].) Both NICO's expert and Levine opined that NICO's profits turned on its ability to provide its customers with larger batches of high-temperature alloy metal. As a result, AMG's conversion did more than delay the sale of inventory that was taken; the conversion also made it more difficult for NICO to accumulate the larger batches its customers wanted, which decreased NICO's overall sales. What is more, the parties' experts provided conflicting testimony specifically on this issue of double counting, and the trial court credited NICO's expert. Given the testimony regarding the additional "ripple effect" the conversion caused, the trial court's award was supported by substantial evidence.

### C. Timing of offset vis-a-vis prejudgment interest

The trial court awarded NICO prejudgment interest on the full value of the scrap metal inventory never returned ($600,405) rather than awarding interest on the balance left after reducing that amount by the $506,490.90 that NICO owed AMG. AMG argues that the trial court should have applied the offset for the amount owed and *then* calculated interest on the reduced balance. We review the trial court's decision for an abuse of

7

discretion.  (*William R. Clarke Corp. v. Safeco Ins. Co. of America* (2000) 78 Cal.App.4th 355, 359.)  A trial court abuses its discretion when it applies an incorrect rule of law.  (*Edwards Wildman Palmer LLP v. Superior Court* (2014) 231 Cal.App.4th 1214, 1224.)

A prevailing party is entitled to interest at the statutory rate from the date a contractual debt becomes due (rather than the subsequent date judgment is entered on that contract) if the contractual debt is "certain" or "capable of being made certain."  (§ 3287, subds. (a), (b); *Chesapeake Industries, Inc. v. Togava Enterprises, Inc.* (1983) 149 Cal.App.3d 901, 906 (*Chesapeake Industries, Inc.*).)  This statutory right to interest is not "defeated" by the possibility that an offset might later be applied.  (*Chesapeake Industries, Inc.*, at p. 907; *Wisper Corp. v. California Commerce Bank* (1996) 49 Cal.App.4th 948, 960-961.)  A party who is found by a court to owe a contractual debt has a competing right to offset any amounts owed to it by the prevailing party.  (Code Civ. Proc., § 431.70.)  Offsetting "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A'" (*Citizens Bank of Md. v. Strumpf* (1995) 516 U.S. 16, 18, quoting *Studley v. Boylston Nat. Bank* (1913) 229 U.S. 523, 528.)

So how are the competing rights to interest and offset to be reconciled?  The California courts have adopted a rule that mirrors the rule triggering the right to interest in the first place:  An offset should be applied (and the amount on which interest is due should be reduced) as of the date the offsetting obligation became both ascertainable in amount and due.  (Code Civ. Proc., § 431.70; *Hansen v. Covell* (1933) 218 Cal. 622, 630-631 (*Hansen*); *Lacy Manufacturing Co. v. Gold Crown Mining Co.* (1942) 52 Cal.App.2d 568, 579; *Muller v. Barnes* (1956) 139 Cal.App.2d 847, 850; *Burgermeister Brewing Corp. v. Bowman* (1964) 227 Cal.App.2d 274, 285; *Leaf v. Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371, 376.)  It is not necessary for the offsetting obligation also to be reduced to judgment or the subject of litigation.  (*Murchison v. Murchison* (1963) 219 Cal.App.2d 600, 605.)  This rule ensures that interest is calculated only on the amount one party actually owes the other (*Hansen*, at pp. 630-631), and thereby guarantees that

8

interest is compensatory rather than punitive (*Great Western Drywall, Inc. v. Roel Construction Co., Inc.* (2008) 166 Cal.App.4th 761, 767-768; *Gourley v. State Farm Mut. Auto. Ins. Co.* (1991) 53 Cal.3d 121, 126-130).

Contrary to this rule, the trial court awarded NICO interest on the full amount of the converted property from the date of the conversion. This was error because NICO's arrearages were ascertainable in amount and effectively became due the moment AMG converted NICO's inventory and ended any possibility that AMG would acquire NICO (and use the offsetting obligation to fund the buyout).

NICO argues that this general rule does not apply to conversion damages because section 3336 defines the "detriment" suffered by a conversion victim as "the value of the property at the time of the conversion, *with the interest from that time*." (§ 3336, italics added.) But section 3336 only sets up a presumption of how to measure damages, and that presumption is rebuttable. (*Ibid.*; *Dakota Gardens Apartment Investors "B" v. Pudwill* (1977) 75 Cal.App.3d 346, 351-352 [noting rebuttable nature of presumption].) More to the point, neither the text of section 3336 nor its legislative history indicates this language was meant to abrogate the longstanding rule that prejudgment interest is to be calculated on the balance of a properly offset obligation. This is the rule followed by other conversion cases. (*Lee v. Merchants Collection Assn.* (1957) 155 Cal.App.2d 762, 766.)

AMG makes the further argument that the trial court should have awarded interest on its offsetting obligation as NICO was acquiring the scrap metal for which that amount was owed. We disagree. Although the total amount that NICO owed for AMG's inventory became due and certain at the moment AMG converted NICO's property, it was not due prior to that moment and was not certain because NICO was accepting (and paying for) AMG's scrap metal on a rolling basis that could change. (§ 3287.) Moreover, once AMG's offsetting obligation is applied to NICO's damages on the date of conversion, AMG has no further right to interest. (*Hansen*, *supra*, 218 Cal. at pp. 631-632 [rejecting argument that interest should be calculated on both the contractual debt and the offsetting obligation].)

9

We accordingly reverse the trial court's ruling on this issue, and remand for application of the offset and recalculation of interest on the balance.

## III.    AMG's cross-claim

The trial court ruled that NICO did not breach the provisions of the exclusive sales agreement requiring NICO to make periodic reports on AMG scrap metal it was holding on consignment because NICO was *purchasing* inventory outright from AMG, not holding it for sale on AMG's behalf.  AMG argues that this was error because (1) the goods were held on consignment, and (2) the trial court's conclusion that NICO did not breach the exclusive sales agreement is inconsistent with its decision to grant AMG an offset for the value of the goods NICO possessed.

Neither argument has merit.  There was evidence that NICO was purchasing AMG's scrap metal, not taking it on consignment.  Moreover, there is no inconsistency in the trial court's rulings.  The offset reflects only that NICO owed AMG for NICO's scrap metal; it does not speak to whether those goods were acquired or held in violation of the exclusive sales agreement.  Substantial evidence supports the trial court's conclusion that they were not:  The agreement contemplated consignment, and only imposed reporting requirements in the event of consignment, so there was no breach of this agreement when NICO was *buying* the scrap.

## IV.    Attorney's fees

In a separate but related appeal, AMG and Misle level two attacks against the trial court's award of $740,257.50 in attorney's fees.  The attorney's fees award was made under section 1717, which empowers a court to award attorney's fees to the "prevailing party" on a contract claim where the underlying contract allows for such fees.  (§ 1717, subds. (a), (b)(1).)  We review a trial court's fee award for an abuse of discretion. (*Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1296.)

AMG first argues that NICO was not the prevailing party on its cross-claim that NICO breached the exclusive sales agreement because the trial court ultimately credited AMG with the value of the inventory as an offset.  As explained above, the question of

10

breach is distinct from the question of offset and AMG did not "prevail on the contract." (§ 1717, subd. (a).)

AMG and Misle also contend that the trial court abused its discretion in awarding NICO, Levine and MacMillan 100 percent of the attorney's fees they requested. Attorney's fees under section 1717 may be awarded only if they were incurred prosecuting or defending contract-based claims, and a trial court is required to allocate fees incurred on the contract claims from those on other claims unless the issues involved in all of the claims are "inextricably intertwined." (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 159; *Korech v. Hornwood* (1997) 58 Cal.App.4th 1412, 1422; *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129.) AMG and Misle assert that the trial court abused its discretion in not sorting the fees NICO, Levine and MacMillan incurred on the contract-based cross-claims from the fees incurred litigating the tort claims in NICO's underlying action. NICO, Levine and MacMillan reply that all of the issues in their action and the cross-complaint were intertwined. These arguments present fact-intensive questions that turn on the trial court's familiarity with the record and its understanding of the interrelatedness of the evidence and claims presented; this is precisely why review is so deferential.

But, in this case, there is nothing to which we can defer. Although we will generally imply any and all findings necessary to uphold a trial court's ruling (*Homestead Supplies, Inc. v. Executive Life Ins. Co.* (1978) 81 Cal.App.3d 978, 984), the trial court appears not to have made any findings at all. The parties squarely presented their allocation arguments to the court, but it held no hearing and issued no oral or written ruling beyond a single sentence awarding the full amount of requested attorney's fees to NICO, Levine and MacMillan. Because "[t]he failure to exercise discretion is an abuse of discretion" (*Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436, 449), we are compelled to reverse and remand the attorney's fees issue for the trial court to exercise its discretion in the first instance (See *S.T. v. Superior Court* (2009) 177 Cal.App.4th 1009, 1016 ["A trial court's failure to exercise its discretion generally requires reversal."].)

11

## DISPOSITION

For the foregoing reasons, we affirm the judgments, reverse and remand for recalculation of the conversion damages and prejudgment interest, and for consideration of the attorney's fees allocation arguments. Each party shall bear its own costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
                              HOFFSTADT

We concur:


_____, P. J.
          BOREN


_____, J.
          CHAVEZ